ANONYMOUS.

In the case of bankers, where greater confidence is asked and reposed, and where dishonest dealings may cause wide-spread disaster, a more rigid responsibility for good faith and honest dealing will be enforced than in the case of merchants and other traders.

A banker who is, to his own knowledge, hopelessly insolvent, cannot honestly continue his business and receive the money of his customers; and although having no actual intent to cheat and defraud a particular customer, he will be held to have intended the inevitable consequences of his act, *i. e.*, to cheat and defraud all persons whose money he receives, and whom he fails to pay before he is compelled to stop business.

(Argued November 21, 1876 ; decided November 28, 1876.)

THIS was an appeal from an order of General Term affirming an order of Special Term, which denied a motion on the part of defendants to vacate an order of arrest.

The order of arrest was based upon the provision of the Code (§ 179, sub. 4), authorizing an arrest "when defendant has been guilty of a fraud in contracting the debt or incurring the obligation for which the action is brought." The affidavits upon which the order of arrest was granted, showed substantially that defendants had for a number of years been doing an extensive business as banker, living in great style, having a large banking-house and many employes, and that they were reputed to be very wealthy. Plaintiffs had been doing business with them for several years, believing them to be perfectly responsible. Plaintiffs purchased of them a sight draft on a London bank ; at the time defendants were hopelessly insolvent, their assets being only sufficient to pay about forty per cent of their indebtedness. This condition of affairs was known to them. Seven days after the draft was purchased defendants closed their doors and made an assignment. The draft was presented and payment refused. Defendants did not show what capital, if any, they had in their business, or by what disaster they became so largely insolvent, nor what reasons, if any, they had to hope they could continue on in their business. *Held*, that the order of arrest was properly granted, the court stating the principle as above.

Defendants' affidavits showed that when the draft was sold they had a large amount of money on deposit in the London bank. Before, however, the draft reached London, this deposit had been exhausted by prior drafts and letters of credit, and defendants had become largely indebted to the drawer. *Held*, that the fact of the deposit did not relieve defendants, and was of no importance.

The court say :

" This is not like the case of a trader who has become embarrassed and insolvent and yet has reasonable hopes that by continuing in business he may retrieve his fortunes. In such a case he may buy goods on credit making no false representations, without the necessary imputation of dishonesty. (*Nichols* v. *Pinner*, 18 N. Y., 295 ; *Brown* v. *Montgomery*,

20 id., 287; *Johnson* v. *Morrell*, 2 Keyes, 655; *Chaffee* v. *Fort*, 2 Lans., 81.) But it is believed that no case can be found in the books holding that a trader who was hopelessly insolvent, knew that he could not pay his debts and that he must fail in business and thus disappoint his creditors, could honestly take advantage of a credit induced by his apparent prosperity and thus obtain property which he had every reason to believe he could never pay for. In such a case he does an act the necessary result of which will be to cheat and defraud another and the intention to cheat will be inferred."

*Samuel Hand* for the appellants.

*Henry H. Morange* for the respondents.

EARL, J., reads for affirmance.
All concur; ALLEN, FOLGER and RAPALLO, JJ., concurring in result.
Order affirmed.